Kane Moon (SBN 249834)
    kmoon@moonlawgroup.com
H. Scott Leviant (SBN 200834)
    hsleviant@moonlawgroup.com
Mariam Ghazaryan (SBN 341119)
    mghazaryan@moonlawgroup.com
Sandy Pham (SBN 352753)
    spham@moonlawgroup.com
**MOON LAW GROUP, PC**
725 S. Figueroa St., Suite 3100
Los Angeles, California 90017
Telephone: (213) 232-3128
Facsimile: (213) 232-3125

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLD SAMUEL CASTRO individually, and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>vs.<br><br>SPRECKELS SUGAR COMPANY, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>    *Defendants*. | Case No.: 3:24-cv-00747-TWR-LR<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      March 27, 2005<br>Time:     1;30 p.m.<br>Courtroom: 3A<br>Judge:    Hon. Todd W. Robinson<br><br>Action Filed: March 13, 2024<br>Removed:   April 25, 2024<br>Trial Date:  Not set |

TO THE COURT, TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 27, 2025, at 1:30 p.m., in Courtroom 3A of the above-entitled Court, located at 221 West Broadway, San Diego, CA 92101, Plaintiff ARNOLD SAMUEL CASTRO will and hereby does move this Court, pursuant to Fed. R. Civ. P. 23(c)(1), for an order:

1. certifying the class described below;

2. appointing Plaintiff ARNOLD SAMUEL CASTRO as representative of the class proposed herein or later proposed and approved by the Court and any other sub-class the Court may devise;

3. appointing Kane Moon, H. Scott Leviant, and Sandy Pham of Moon Law Group, PC, as Class Counsel pursuant to Fed. R. Civ. P. 23(g); and,

4. issuing such other Orders as necessary to effectuate the Court's certification Order.

This motion is brought on the grounds that this action properly may be certified as a class action under Fed. R. Civ. P. 23(a) and 23(b).

Certification issues were discussed between counsel on several occasions, including as part of two Early Neutral Evaluations and conferences related thereto. There was no possibility of resolving certification without a motion.

This motion is based upon this Notice, the Memorandum of Points and Authorities filed in support thereof, the declarations filed herewith as well as the exhibits thereto, the pleadings and records on file in this action, and such additional argument and evidence as may be presented at the hearing on this motion.

Respectfully submitted,

Dated:  January 6, 2025            **MOON LAW GROUP, PC**

By: _____

H. Scott Leviant

Attorneys for Plaintiff

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1

TABLE OF CONTENTS

2

3  TABLE OF CONTENTS....................................................................................... i

4  TABLE OF AUTHORITIES ............................................................................... iii

5  I.    INTRODUCTION.........................................................................................1

6  II.   THE CLASS FOR WHICH PLAINTIFF REQUESTS CERTIFICATION .........2

7  III.  STATEMENT OF FACTS.............................................................................3

8        A.   Claims at Issue in the Complaint and Facts Relevant to All Claims .........3

9        B.   The Vast Majority of the Class is Covered by a CBA ..............................3

10       C.   Defendant Failed to Pay Class Members All Wages Owed......................4

11             1.   Defendant Does Not Have Enough Time Clocks to Allow Class

12                  Members to Efficiently Clock in for Shifts and After Lunch,

13                  Causing Work Off-the-Clock Without Compensation......................4

14             2.   Defendant Also Underpaid Employees by Failing to Calculate the

15                  Regular Rate of Pay Correctly When Paying Meal Period Premium

16                  Wages and Sick Pay Wages ...............................................5

17  IV.   STANDARDS GOVERNING MOTIONS FOR CLASS CERTIFICATION .....7

18        A.   Plaintiff's Allegations Are Presumed True, Competing Evidence is not

19             Weighed, and No Merits Determinations Are Made ................................7

20        B.   Variations in Class Member Damages Do Not Present a Basis for

21             Declining Certification...................................................................8

22        C.   There Is No Ascertainability Requirement in Rule 23...............................8

23  V.    THE REQUIREMENTS FOR CLASS CERTIFICATION ARE SATISFIED....8

24        A.   The Requirements of Rule 23 (a) Are Satisfied Here ...............................9

25             1.   Numerosity ..................................................................9

26             2.   Typicality....................................................................9

27             3.   Adequacy of Representation...........................................10

28

4. Commonality Exists: All Class Members Were Subjected to the Same Policies......................................................................11

B. Plaintiff Also Satisfies the Requirements of Rule 23 (b)(3) ....................11

1. Common Issues of Law and Fact Predominate Over Individual Ones ...............................................................................12

a) Defendant's Inadequate Time Clock Facilities Supports a Common Question Regarding Compensability of Avoidable Time Spent Waiting to Clock In .................................13

b) Defendant's Regular Rate Calculation Errors Raise Common Legal Questions of the Legality of the Payment Calculation Methodology ..........................................................15

c) Derivative Labor Code violations and the Unfair Competition Law raise no predominance issues. ...........................16

2. Individualized Issues as to Damages Do Not Defeat Predominance.16

3. The Ninth Circuit Rejected an Ascertainability Requirement ........17

4. Class-Action Treatment Is Superior to Individual Actions..............17

a) Based on the Nature and Size of the Claims, Class Members Have Little Incentive to Bring Individual Actions. .................18

b) No Other Actions Are Known to Exist....................................18

c) Concentrating Class Claims in a Single Forum Is Desirable. ..18

d) No Significant Management Difficulties Are Present.............18

VI. CONCLUSION ...............................................................................19

TABLE OF AUTHORITIES

**CALIFORNIA DECISIONAL AUTHORITY**

*Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257 (2016), *as modified on denial of reh'g* (Mar. 15, 2017)...................................................................................................14

*Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858 (2021) ......................................15

*Indus. Welfare Comm'n v. Superior Court*, 27 Cal. 3d 690 (1980)..................................13

*Martinez v. Combs*, 49 Cal. 4th 35 (2010), as modified (June 9, 2010)...........................13

*Troester v. Starbucks Corp.*, 5 Cal. 5th 829 (2018), *as modified on denial of reh'g* (Aug. 29, 2018) .......................................................................................................................14


**FEDERAL DECISIONAL AUTHORITY**

*Abdullah v. U.S. Sec. Associates*, 731 F.3d 952 (9th Cir. 2013)................................ 11, 12

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)............................................................12

*Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686 (9th Cir. 1977), *cert. denied* 434 U.S. 829 (1977)................................................................................................7

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976)7, 8, 19

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), *cert. denied sub nom*. *ConAgra Brands, Inc. v. Briseno*, 138 S. Ct. 313, 199 L. Ed. 2d 206 (2017)......... 8, 17

*Comcast Corp. v. Behrend*, 133 U.S. 1426 (2013) ..........................................................16

*Del Campo v. American Corrective Counseling Servs., Inc.*, 254 F.R.D. 585 (N.D. Cal. 2008) ..............................................................................................................................11

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010)...................................16

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ............................................... 7, 8, 18

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ....................................7, 8

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ......................................................10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)..............................9, 10, 12, 18

*In re Adobe Systems, Inc. Securities Litig.*, 139 F.R.D. 150 (N.D.Cal. 1991) ................11

*In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367 (N.D. Cal.
    Feb. 21, 2017).........................................................................................................17

*Leyva v. Medline Industries, Inc.,* 716 F.3d 510 (9th Cir. 2012) .....................................12

*Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244
    F.3d 1152 (9th Cir. 2001) ......................................................................................12

*Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008) .................................7

*Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475 (9th Cir. 1983)....................................7

*Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361 (C.D. Cal. 2009) ..........................12

*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018), *cert. dismissed*, 139 S.
    Ct. 1651, 203 L. Ed. 2d 921 (2019) .......................................................................8

*Schwartz v. Harp*, 108 F.R.D. 279 (C.D. Cal. 1985)........................................................10

*Smith v. Ford Motor Company*, 749 F.Supp.2d 980 (N.D. Cal. 2010) ...........................16

*Staton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003) ..........................................7, 10

*Stearns v. TicketMaster Corp.*, 655 F.3d 1013 (9th Cir.2011) ..........................................8

*Valentino v. Carter- Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)...............................7, 17

*Vaquero v. Ashley Furniture Indus., Inc.*, No. CV 12-8590 PA (MANX), 2013 WL
    12172124 (C.D. Cal. June 17, 2013), *aff'd,* 824 F.3d 1150 (9th Cir. 2016).............17

*Vaquero v. Ashley Furniture Industries, Inc.,* 824 F.3d 1150 (9th Cir. 2016)............9, 16

*Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S.Ct. 2541 (June 20, 2011).... 8, 9, 10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc. (In re Visa Check/Mastermoney Antitrust Litig.)*,
    280 F.3d 124 (2nd Cir. 2001).................................................................................12

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ..............................................................11

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir.), amended by 273 F.3d 1266
    (9th Cir.2001) ...........................................................................................................7

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

STATUTES

Bus. & Prof. Code § 17200, et. seq. ......................................................................16

Labor Code § 1198 ...............................................................................................13

Labor Code § 203 ..................................................................................................16

Labor Code § 226.7(b) ..........................................................................................15

Labor Code § 246(*l*)(1) ........................................................................................15

RULES

Fed. R. Civ. P. 23 ...........................................................................................passim

TREATISES

3 Conte & Newberg, *Newberg on Class Actions* § 7.20 (4th ed. 2002) .............................7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is wage and hour class action lawsuit involving hourly employees that worked for beet sugar processing company SPRECKELS SUGAR COMPANY, INC. ("SPRECKELS" or "Defendant") in California. In this motion for class certification, Plaintiff moves to certify a class of approximately 900 employees on one main theory of liability, the failure to pay all wages owed for all hours worked.

As an initial observation, virtually all of the proposed Class is comprised of members of the United Food and Commercial Workers, Local 135, AFL-CIO, CLC labor union (the "Union"). Because of this, Plaintiff will not move to certify claims that would be pre-empted by the Labor Management Relations Act ("LMRA"), hence the narrow focus of this certification motion.

Turning to the theory of liability, Defendant failed to pay all wages owed to Class members in several ways.  It provided inadequate facilities for employees to clock in for their shifts and in from meal periods, which forced employees to arrive early for their work shifts and cut short meal periods to wait, off the clock, for their turn to clock in at a timeclock.  And Defendant failed to correctly calculate the regular rate of pay for sick pay and meal period premium compensation.  Both of these issues resulted in a failure to pay all wages owed to the Class.[1]

Second, as a result of wage payment issues, Defendant issued deficient wage statements to a sub-class of employees who worked at any time during the year prior to the filing of this action, and Defendant failed to pay all wages owed to former employees at the conclusion of their employment.

---

[1] Defendant is likely to argue that a "claim" for failure to pay sick pay correctly was not alleged. However, Defendant is confused regarding California law.  There is no such thing as a "claim" for failure to pay sick pay.  Sick pay is simply a component of wage payments generally, and the failure to pay all wages owed is the gravamen of Plaintiff's unpaid wage claims.  In addition, Plaintiff's derivative causes of action allege a failure to pay all wages owed, which provides a basis for all recoveries related to the failure to pay all wages owed, including correctly calculated sick pay wages.

This matter is well suited to class certification because these theories of liability raise clear legal and/or factual questions that can be answered on a classwide basis and proven with records showing regular rate errors and representative class member testimony to estimate the wait time spent in timeclock lines.

Class actions are never "simple," but the theories that are the focus of this certification motion are undeniably on the "simple" end of the certification spectrum.

## II.  THE CLASS FOR WHICH PLAINTIFF REQUESTS CERTIFICATION

Plaintiff requests that the Court certify the following class:

**Class**:  All persons who worked for Defendant in California as an hourly, non-exempt employee at any time during the period beginning July 8, 2022, and ending when notice to the Class is sent.[2]

**Wage Statement Sub-Class**:  All Class members who worked for Defendant at any time during the period beginning March 13, 2023, and ending when notice to the Class is sent.

**Campaign Sub-Class**:  All persons who worked for Defendant during any "Campaign Season" but not during any "Intercampaign Season" in hourly-paid or non-exempt positions in California at any time during the period beginning July 8, 2022, and ending when notice to the Campaign Sub-Class is sent.

**Campaign Wage Statement Sub-Class**:  All Campaign Sub-Class members who worked for Defendant at any time during the period beginning March 13, 2023, and ending when notice to the Campaign Sub-Class is sent.

Plaintiff further requests certification of unspecified sub-classes as are necessary to

---

[2] Defendant settled a prior class action for $2,400,000.00, with that settlement extending through July 7, 2022, which is the basis for setting the start period of the proposed class period at July 8, 2022.  (*See*, Leviant Decl., **Exhibit 3**.)

1  manage the proposed classes, including penalty sub-classes defined by applicable statutes

2  of limitation or sub-classes limited to specific job titles.

3

4  **III.   STATEMENT OF FACTS**

5      **A.      Claims at Issue in the Complaint and Facts Relevant to All Claims**

6      The First Amended Complaint alleges claims for relief as follows: (1) Failure to Pay

7  Minimum Wages; (2) Failure to Pay Overtime Compensation; (3) Failure to Provide Meal

8  Period); (4) Failure to Provide Rest Periods; (5) Failure to Indemnify Necessary Business

9  Expense); (6) Failure to Timely Pay Final Wages at Termination; (7) Failure to Provide

10 Accurate Written Wage Statements; (8) Unfair Competition; and, (9) Civil Penalties under

11 PAGA.  (Dkt. 8.)  The causes of action implicated by the theories of certification presented

12 here are the **first** and **second** claims for relief related to wage payments, along with the

13 derivative claims for relief stated in the **sixth**, **seventh**, and **eighth** claims for relief (the

14 UCL claim being relevant primarily to extend the statute of limitation on unpaid wage

15 claims).

16     **B.      The Vast Majority of the Class is Covered by a CBA**

17     Effective as of January 1, 2022, SPRECKELS entered into a CBA with the Union.

18 Under that agreement, membership is required after 30 days of employment:

19         Membership in good standing in the Union, on or immediately following

20         the thirtieth (30th) day following the beginning of employment or the

21         effective date this Agreement, whichever is later, shall be a condition of

22         continued employment.

23 (*See*, Leviant Decl., **Exhibit 2**.) Only supervisors and employees engaged in confidential

24 work are excluded from the CBA.  Since the vast majority of the Class is covered by the

25 CBA, Plaintiff's motion for class certification is limited to claims not pre-empted by the

26 LMRA.

27

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**C.    Defendant Failed to Pay Class Members All Wages Owed**

      **1.    Defendant Does Not Have Enough Time Clocks to Allow Class Members to Efficiently Clock in for Shifts and After Lunch, Causing Work Off-the-Clock Without Compensation**

In Plaintiff's FAC, Plaintiff alleges that Plaintiff and the Class were required to wait in line to clock into work, without compensation:

> Throughout the statutory period, Defendants maintained a policy and practice of not paying Plaintiff and the Class for all hours worked, including all overtime wages. Plaintiff and the Class were required to work off the clock, and uncompensated. For example, Plaintiff and the Class were required to wait in line in order to clock into work, off the clock and uncompensated.

(FAC, ¶ 16.)  Plaintiff's Declaration, filed herewith, elaborates on the off-the-clock work in timeclock lines:

> When I arrived at worksite, I would walk to one of the timeclocks and clock in with an eye scanner.  Because the timeclocks were unpredictable about how well they would work, I and other employees had to arrive early enough to be sure that we could get to a timeclock, get through the line, and then clock in by our scheduled start time.  There were usually ten or more individuals in line for each timeclock.  The time needed to get clocked in after getting in line varied, and on some occasions the wait to get through the timeclock line took up to five minutes.  But since I and other employees did not know if we would be waiting in line for five minutes or two minutes or three minutes, we had to arrive early to be sure we could get to the timeclock and then clock in on time.  We were not paid for arriving early to be sure we could clock in on time.  We were not paid for standing in line for two to five minutes each shift while waiting for our turn at a timeclock.

(Castro Decl., ¶ 6.)  In addition to waiting in line to clock in for his shift, Plaintiff and the Class cut meal periods short because of the timeclock delays:

> At the end of my meal break, I also had to wait in line to get to the timeclock.  While the wait time was a little shorter that the wait time to start my shift, I still had to cut my meal period short by about two minutes to go stand in line at the timeclock.  We were not paid for standing in line for about two minutes each shift while waiting for our turn at a timeclock at the end of our meal period.

(Castro Decl., ¶ 7.)  Plaintiff was never paid for the time spent waiting in line to access a timeclock.  (Castro Decl., ¶ 8-9.)

> **2.      Defendant Also Underpaid Employees by Failing to Calculate the Regular Rate of Pay Correctly When Paying Meal Period Premium Wages and Sick Pay Wages**

Defendant produced a sample of time and pay records for 87 employees, which was a 20% randomly drawn sample of the 435 employees comprising the Campaign Sub-class as it existed as of about August 2024.  (Leviant Decl., ¶ 10.)  Those documents were evaluated for multiple purposes, on being the manner in which wage payments based on the regular rate were calculated.  (*Id*.)  Overtime payments, meal period premium payments, and sick pay wages were all analyzed. (*Id*.)

First, as to the reliability of the sample, the margin of error calculation for the sample of the Class in this case is as follows:

$$1.96\sqrt{\frac{0.5(1-0.5)}{87}}\sqrt{\frac{900-87}{900-1}} = \text{margin of error}[3] = 9.99\%$$

(*Id*., at ¶ 11.)  The class size is believed to include approximately 900 individuals, based on

---

[3] The term "1.96" is derived from a standard deviation table for a 95% confidence interval, known as a "z-table." It is not affected by sample or population size.  The margin of error is an "overestimate" of because the variance is presumed to be at its highest value, using 0.5(1-0.5) to represent p*q in the variance equation of (p*q)/n.  Since the data suggests that the distribution of impacted individuals is less than 50%, the true margin of error is smaller than the calculation shows.

1  Defendant's Notice in support of its removal of this matter to federal court. (*Id*.)  With a

2  sample of 87 individuals, the margin of error, using the population adjustment factor, was

3  no more than 9.99 percent. (*Id*.)

4       In the sample data, examining instances where employees received meal period

5  premiums and additional compensation, pay records show that 23% of the sample received

6  meal period premium payments paid at the base hourly rate, despite receiving additional

7  compensation in the same pay period.  (*Id*., at ¶ 12; *see also, e.g.,* **Exhibits 4** and **5**.)

8  Extrapolated to the Campaign Sub-class, 100 employees were affected.  Extrapolated to

9  the full Class, an estimated 207 employees would be affected, ± 9.99%. (*Id*.)

10      In the sample data, examining instances where employees received sick pay and

11 additional compensation, pay records show that 27.6% of the sample received sick pay

12 payments paid at the base hourly rate, despite receiving additional compensation in the

13 same pay period.  (*Id*., at ¶ 13 *see also, e.g.,* **Exhibit 6**.)  Extrapolated to the Campaign

14 Sub-class, 120 employees were affected.[4] (*Id*.)  Extrapolated to the full Class, an estimated

15 248 employees would be affected, ± 9.99%.  (*Id*.)

16      Overlap was identified between the individuals affected by meal period premium

17 regular rate issues and the individuals affected by sick pay regular rate issues.  (*Id*., at ¶ 14

18 *see also, e.g.,* **Exhibit 5**.)  With duplicates removed, the extrapolation to the Campaign

19 Sub-class predicts that 140 Campaign Sub-class members would have experienced one or

20 both forms of regular rate underpayments.  (*Id*.)  Extrapolated to the full Class, an

21 estimated 289 employees would be affected, ± 9.99%.  (*Id*.)

22

23

24

25      _____

26      [4] Note: in the event that this Court is ever asked to find that there is no individual private right of action to recover underpaid sick pay wages under the California Labor Code, and agrees with that argument, Plaintiff observes that these unpaid wages act as an additional basis for recovering late final

27 pay penalty wages under Labor Code § 223 and wage statement penalties for the issuance of erroneous wage statements with incorrect hourly rates of pay, in violation of Labor Code § 226, and would not be

28 affected by such a ruling on the wages themselves.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1   **IV.   <u>STANDARDS GOVERNING MOTIONS FOR CLASS CERTIFICATION</u>**

2          Parties seeking certification bear the burden of demonstrating that they meet the

3   requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements

4   of Rule 23(b).  *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979-80 (9th Cir. 2011),

5   citing *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1186 (9th Cir.), amended by

6   273 F.3d 1266 (9th Cir.2001).[5]  The requirements of Rule 23 "should be liberally

7   construed."  3 Conte & Newberg, *Newberg on Class Actions* § 7.20 (4th ed. 2002).

8          **A.     <u>Plaintiff's Allegations Are Presumed True, Competing Evidence is not</u>**

9                  **<u>Weighed, and No Merits Determinations Are Made</u>**

10         When deciding on a certification motion, all factual allegations in Plaintiffs'

11  operative complaint must be accepted as true.  *Arthur Young & Co. v. United States Dist.*

12  *Court*, 549 F.2d 686, 688 n.3 (9th Cir. 1977), *cert. denied* 434 U.S. 829 (1977); *Blackie v.*

13  *Barrack*, 524 F.2d 891, 900 n. 17 (9th Cir. 1975), cert. denied, 429 U.S. 816 (1976).  As

14  the Ninth Circuit reiterated in *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475 (9th Cir.

15  1983), a limited "inquiry into the substance of a case may be necessary to ascertain

16  satisfaction of Rule 23(a)'s commonality and typicality requirements, [but] it is improper

17  to advance a decision on the merits to the class certification stage."  *Id.* at 480 (citing

18  *Eisen*, 417 U.S. at 177-178); see also *Valentino v. Carter- Wallace, Inc.*, 97 F.3d 1227,

19  1231-32 (9th Cir. 1996).  Instead, at this point, the Court need only determine if the

20  Plaintiff has satisfied Rule 23, ***not weigh competing evidence***.  *Staton v. Boeing Company*,

21  327 F.3d 938 (9th Cir. 2003); *Blackie*, 524 F.2d at, 901 n.17.  At the certification stage,

22  "the court makes no findings of fact and announces no ultimate conclusions on Plaintiffs'

23  claims." *Mazza v. Am. Honda Motor Co*., 254 F.R.D. 610, 616 (C.D. Cal. 2008), reversed

24  on other grounds.

25

26

27         [5] Plaintiff discusses Rule 23(a) requisites in Section V.A, and Rule 23(b)(3) requisites in Section

28  V.B.

Consistent with the requirement to accept factual allegations as true and refrain from reaching ultimate conclusions as to the merits, the Ninth Circuit has held that ***the evidence presented in support of certification need not be admissible***. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1651, 203 L. Ed. 2d 921 (2019). In that matter, the Ninth Circuit held, "Although we have not squarely addressed the nature of the 'evidentiary proof' a plaintiff must submit in support of class certification, we now hold that such proof need not be admissible evidence." *Id*.

## B.    Variations in Class Member Damages Do Not Present a Basis for Declining Certification

Variations in damages do not present a basis for declining class certification. "The amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie*, 524 F.2d at 905; *Stearns v. TicketMaster Corp.*, 655 F.3d 1013, 1026 (9th Cir.2011) (citing *Blackie* in case decided after *Wal–Mart* and *Ellis*).

## C.    There Is No Ascertainability Requirement in Rule 23

While some courts have imposed an ascertainability requirement onto the Rule 23 certification requisites, the Ninth Circuit, in 2017, joined other Circuits in expressly rejecting such a requirement: "We have never interpreted Rule 23 to require such a showing, and, like the Sixth, Seventh, and Eighth Circuits, we decline to do so now." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017), *cert. denied sub nom. ConAgra Brands, Inc. v. Briseno*, 138 S. Ct. 313, 199 L. Ed. 2d 206 (2017).

## V.    THE REQUIREMENTS FOR CLASS CERTIFICATION ARE SATISFIED

In this context, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). The court "is bound to take the substantive allegations of the complaint as true," *Blackie v. Barrack*, 524 F.2d 891, 907 n. 17 (9th Cir. 1975).

### A. The Requirements of Rule 23 (a) Are Satisfied Here

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, 131 S.Ct. 2541, 2551 (June 20, 2011).[6]   Under Rule 23(a), the party seeking certification must demonstrate that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable," not impossible.  FED. R. CIV. P. 23(a)(1); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Here, the Class and Campaign Subclass are admitted by Defendant to be numerous.  Defendant's removal filing states that "there are approximately 900 purported class members" for the full class period beginning March 13, 2020.  (Leviant Decl., ¶ 9, and **Exhibit 1**.)  Limiting the class period to July 8, 2022, to the present should reduce that number somewhat, but it still must be significantly higher than the number of Campaign Subclass members, who worked seasonally. Defendant later disclosed that there were approximately 435 Campaign Subclass members.  (Leviant Decl., ¶ 9.)  Numerosity cannot reasonably be disputed.

#### 2. Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive

---

[6] Of course, this case has little in common with *Wal-Mart*.  The legality and adequacy of wage payments is a strict liability issue for which no individual inquiry of intent is required.  This case suffers from none of the classwide core proof issues that plagued *Wal-Mart*, where decisions regarding promotions of millions of women were at issue.  *See*, *e.g.*, *Vaquero v. Ashley Furniture Industries, Inc.*, 824 F.3d 1150 (9th Cir. 2016) (finding *Wal-Mart* inapposite because the plaintiffs' wage and hour claims raised a "common injury" well suited to class treatment). The claims presented for certification raise questions that are effectively a single, common questions of law and/or fact for the proposed class.

Case No.:  3:24-cv-00747-TWR-LR                     Page 9                     *Castro v. Spreckels Sugar Company, Inc.*

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

with those of absent class members; ***they need not be substantially identical***." *Hanlon*, 150 F.3d at 1020 (boldface emphasis added); *see also Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985). The commonality, typicality, and adequacy-of-representation requirements "tend to merge" with each other. *Wal-Mart*, at 2551 n. 5 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982)).

Plaintiff is a member of the proposed class and suffered the same injury as fellow class members – namely, the wage and hour violations alleged in the Complaint that are the focus of this motion.  Plaintiff's and absent class members' claims arise from the same conduct and are based on the same legal theories.   Like all class members, Plaintiff was governed by uniform policies that applied to all of Defendant's California operations. Typicality is satisfied.  (Castro Decl., ¶¶ 2-9.)

### 3.    Adequacy of Representation

The adequacy requirement under Rule 23(a)(4) requires: (1) that the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and (2) that plaintiffs are represented by qualified and competent counsel. *See Hanlon*, 150 F.3d at 1020 (adequacy turns on absence of conflicts with other class members and whether named plaintiffs and their counsel prosecute the action vigorously).  In *Staton v. v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003), the Ninth Circuit stated two questions that define adequacy: (1) do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?  *Staton*, 327 F.3d at 957; *Hanlon*, 150 F.3d at 1020.  Here, the answer to the first is "No," and the second, "Yes."

Plaintiff's declaration demonstrates that Plaintiff suffered the same wage and hour issues as other class members, that he understands his role as class representative, and that, to his knowledge, he has no known conflicts of interest with any other class members.[7]

---

[7] The test is "whether or not plaintiffs have demonstrated a willingness and vigor to prosecute the action, whether they have any disabling conflicts going to the heart of the controversy, and whether they

(Castro Decl., ¶¶ 2-13.)  This Court should appoint him to represent the class.

Similarly, counsel's declaration establishes that Plaintiff's counsel are experienced litigating wage and hour class actions and other complex cases.  (*See,* Leviant Decl., ¶¶ 4-8.)

### 4.    Commonality Exists: All Class Members Were Subjected to the Same Policies.

Rule 23(a)(2) requires that there be questions of fact or law common to the class. Fed. R. Civ. P. 23 (a)(2).  *Abdullah v. U.S. Sec. Associates*, 731 F.3d 952, 957 (9th Cir. 2013) (one common question can be sufficient if common answers result).  Further, commonality can also be provided by common defenses.  *See, e.g.*, *Del Campo v. American Corrective Counseling Servs., Inc.*, 254 F.R.D. 585, 592 (N.D. Cal. 2008) ("With respect to legal commonality, Defendants are asserting a common defense.").

Here, based on the class definition and the issues described in Sections II and III, above, class members share an overarching common set of claims regarding the legality of Defendant's wage payment practices and procedures.  *See*, *e.g.*, *Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006) (finding commonality satisfied where class members' claims "derive from a common core of salient facts, and share many common issues" and granting class certification).  Plaintiff alleges clear wage underpayments, and sample data from Defendant confirms a portion of those underpayments.  Commonality exists and is satisfied.

### B.    Plaintiff Also Satisfies the Requirements of Rule 23 (b)(3)

Under Rule 23(b)(3), certification is proper if (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual class members; and (2) class treatment is superior to other available methods for the fair and

---

have qualified counsel." *In re Adobe Systems, Inc. Securities Litig.*, 139 F.R.D. 150, 156 (N.D.Cal. 1991) (plaintiffs understood gravamen of their claims, and need not be intimately familiar with every issue). *See also, Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (Adequacy depends on counsel's qualifications, an absence of antagonism, a sharing of interests between representatives and absentees, and unlikelihood of collusion.)

efficient adjudication of the controversy. *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Negrete*, 238 F.R.D. at 487, 489. Here, Plaintiff satisfies both predominance and superiority.

### 1. Common Issues of Law and Fact Predominate Over Individual Ones

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). The Court must find that questions of law or fact common to the class members predominate over any questions affecting only individual members. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc. (In re Visa Check/Mastermoney Antitrust Litig.)*, 280 F.3d 124, 136 (2nd Cir. 2001) (common questions predominate where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof.").

The Ninth Circuit holds that predominance is met where common questions of liability are present and damages can be feasibly and efficiently calculated. *See*, *e.g.*, *Leyva v. Medline Industries, Inc.,* 716 F.3d 510, 514 (9th Cir. 2012) (finding predominance where wage & hour claims presented common questions and damages could be calculated using company documents and testimony); *Abdullah*, 731 F.3d at 964-67 (predominance satisfied where plaintiffs' claims would prevail or fail in unison given the common legal questions and ability to calculate class damages). The Ninth Circuit looks for "a common nucleus of operative facts and potential legal remedies," but does not require complete identity among class members. *Hanlon*, 150 F.3d at 1022-23. Certification is appropriate where the action focuses on the words and conduct of the defendants, rather than on the behavior of individual class members. *Ortega v. J.B. Hunt Transport, Inc.*, 258 F.R.D. 361, 367 (C.D. Cal. 2009) ("focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members").

Here, there are primary questions of law and fact common to the members of the class, and the resolution of those question will be the primary determination required to fix liability in this matter.  Common legal questions are also the core issues for the derivative claims.

> a)    *Defendant's Inadequate Time Clock Facilities Supports a Common Question Regarding Compensability of Avoidable Time Spent Waiting to Clock In*

Defendant's inadequate timeclock infrastructure gives rise to common questions of law and fact regarding whether employee wait time to clock in for work violated and violates the requirement to pay all wages for all time worked.

Wage and hour law in California is governed by the Labor Code and, with their more detailed particularity, the Wage Orders promulgated by the IWC. *Martinez v. Combs*, 49 Cal. 4th 35, 52 (2010), as modified (June 9, 2010) ("Section 1194 is the direct successor of, and its operative language comes immediately from, section 13 of the uncodified 1913 act (Stats. 1913, ch. 324, § 13, p. 637) that created the IWC and delegated to it the power to fix minimum wages, maximum hours and standard conditions of labor for workers in California.").  The Labor Code and the Wage Orders operate in concert to establish California's "standard conditions of labor." Lab. Code § 1198; *Indus. Welfare Comm'n v. Superior Court*, 27 Cal. 3d 690, 700-701 (1980); *see also*, *Martinez*, at 52-62.

Beyond Labor Code provisions that embody California's requirement that employers pay employees for *all* time worked, the IWC Wage Orders confirm that payment for "all hours worked" is incompatible with exceptions that allow less. The Wage Orders mandates a minimum wage payment for "all hours worked" and a premium rate of pay for "all hours worked" overtime.  Wage Orders, at §§ 3(A)(1) and (4)(A). The Wage Orders define "hours worked" as including "***all the time*** the employee is suffered or permitted to work, whether or not required to do so . . . ." (Emphasis added.)[8]

---

[8] The relevant language in the wage orders is identical.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    As recently emphasized by the California Supreme Court, it is a "core statutory and

2    regulatory purpose that employees be paid for all time worked." *Troester v. Starbucks*

3    *Corp.*, 5 Cal. 5th 829, 847 (2018), *as modified on denial of reh'g* (Aug. 29, 2018).  In

4    *Troester*, the California Supreme Court confirmed that any underpayments to an employee

5    that are capable of detection or even estimation are, by definition, violations of California

6    laws requiring payment of all wages for *all* hours worked.  This obligation is consistent

7    with the employee-protective policies that underlie California's wage and hour laws.

8    *Troester*, 5 Cal. 5th at 839, *quoting Augustus v. ABM Security Services, Inc*., 2 Cal. 5th

9    257, 262 (2016).

10    The obligation to pay for all time worked includes the obligation to pay for even

11    very small amounts of time.  A Court of Appeal recently said of Troester's guidance:

12    First, the California Supreme Court has stated that the Labor Code and the

13    relevant wage order "contemplate[ ] that employees will be paid for all

14    work performed."

15    *Camp v. Home Depot U.S.A., Inc*., 84 Cal. App. 5th 638, 657 (2022), pet. for rev. granted

16    (Feb. 1, 2023), citing *Troester*, 5 Cal. 5th at 840.

17    Second, the California Supreme Court has explained that "the regulatory

18    scheme of which the relevant [California] statutes and wage order

19    provisions are a part is ... concerned with 'small things.' "

20    *Camp*, 84 Cal. App. 5th at 657, citing *Troester*, 5 Cal. 5th at 844.

21    This question, whether the inadequate time clock infrastructure utilized by

22    Defendant creates an obligation to compensate employees arriving early to accommodate

23    the uncertain wait time to clock in for shifts, is well suited to class resolution. As the

24    allegations are summarized above, wait times for biometric eye scanning time clocks

25    could, when malfunctions occurred, cause wait times of five minutes or more to clock in

26    for a shift.  Plaintiff described the process involved in arriving at work and confronting

27    uncertain waits to clock in for work.  The allegation is presumed true for purposes of

28    certification.  Variations in estimates of the average wait time will be resolved by the trier

of fact.  The legal merits question of whether the wait time is compensable is not adjudicated at the certification stage and would be addressed by the Court at the merits stage.

> b)    *Defendant's Regular Rate Calculation Errors Raise Common Legal Questions of the Legality of the Payment Calculation Methodology*

Pursuant to Labor Code § 226.7(b) if an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.  The California Supreme Court has explained the way that employers must calculate premium compensation to employees for missed meal and rest breaks under state law.  *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858 (2021). In *Ferra v. Loews Hollywood Hotel, LLC*, the Court held that employers must pay California employees premiums for meal and rest break violations at the employees' regular rate of pay as opposed to the base hourly rate.  *Ferra*, 11 Cal. 5th at 878.  **Exhibits 4** and **5** to the Leviant Declaration show examples of the regular rate errors in meal period premium payments and confirm that Defendant's records, standing alone, will permit this issue to be resolved for the Class.  (*See*, Leviant Decl., **Exhibits 4** and **5**.)

As described above, Defendant also failed to pay sick leave at the "regular rate of pay," which constitutes a violation of the Healthy Workplaces, Healthy Families Act. See Labor Code § 246(*l*)(1).  The sick pay described above has already issued and constitutes vested wages.  If this form of underpayment is found to be an unlawful underpayment, a foregone conclusion, then the violation would provide an additional basis for recovering under Labor Code §§ 203 and 226.  Examples of the regular rate errors in pick pay wage payments also confirm that Defendant's records, standing alone, will permit this issue to be resolved for the Class.  (*See*, Leviant Decl., **Exhibits 6**.)

c)    *Derivative Labor Code violations and the Unfair Competition Law raise no predominance issues.*

Common questions also predominate as to the UCL and Labor Code violations that are derivative of the failure to pay all forms of unpaid wages (*i.e.*, the claims Labor Code § 226(a), Labor Code § 203, and Bus. & Prof. Code § 17200). As a district court has explained, claims for waiting time penalties under Labor Code § 203 and for inaccurate wage statement penalties under Labor Code § 226 are derivative of the underlying wage-and-hour claim and therefore "if Plaintiff's other claims can be tried on a class-wide basis, these claims are also ripe for class adjudication." *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 640 (S.D. Cal. 2010).[9]

The UCL prohibits unfair, unlawful and fraudulent business activities. Bus. & Prof. Code § 17200, et. seq.  With respect to the "unlawful" prong of the UCL, the common questions set forth above regarding unpaid wages are relevant, as the UCL "borrows" those violation.  Thus, Plaintiff's UCL claim is derivative of the underlying wage and hour claim. *Smith v. Ford Motor Company*, 749 F.Supp.2d 980, 997 (N.D. Cal. 2010) (claim brought under unlawful prong of UCL rises or falls with underlying statutory claim).

## 2.    Individualized Issues as to Damages Do Not Defeat Predominance.

In a wage and hour case, the potential need to prove damages on an individual basis does not defeat predominance and therefore is not a basis for denying certification. *Vaquero v. Ashley Furniture Industries, Inc.,* 824 F.3d 1150 (9th Cir. 2016).  In *Vaquero* the defendant in a wage and hour case argued that pursuant to *Comcast Corp. v. Behrend*, 133 U.S. 1426 (2013) predominance does not exist if damages calculations must be performed on an individual basis. The Ninth Circuit rejected that construction of *Comcast. Id.* at 1154.  The Ninth Circuit explained: "In a wage and hour case, unlike in an antitrust

---

[9] The wage statement claim is "derivative" because if no additional wages were owed, the wage statements were not inaccurate in that respect.  A derivative violation is distinguished from a "facial" violation on a wage statement, such as the failure to identify the employer or list rates of pay, causing a legal violation that is not dependent upon some other unlawful conduct.

1   class action, the employer-defendant's actions *necessarily* caused the class members'

2   injury. . . . Therefore, even if the measure of damages proposed here is imperfect, it cannot

3   be disputed that the damages . . . stemmed from *Defendants'* actions." *Id.* at 1155.

4        The District Court in *Vaquero v. Ashley Furniture Indus., Inc.*, later affirmed by the

5   Ninth Circuit in *Vaquero v. Ashley Furniture Indus., Inc*., 824 F.3d 1150 (9th Cir. 2016),

6   relied upon Ninth Circuit authority explaining that damage determinations are

7   individualized in nearly all wage and hour class actions. *Vaquero v. Ashley Furniture*

8   *Indus., Inc.*, No. CV 12-8590 PA (MANX), 2013 WL 12172124, at *7 (C.D. Cal. June 17,

9   2013), *aff'd*, 824 F.3d 1150 (9th Cir. 2016) ("However, 'damages determinations are

10  individual in nearly all wage-and-hour class actions.'"). Since damage determination are

11  individualized in virtually all wage and hour class actions, any contention that damages

12  vary is simply an attempt to negate predominance. The result here should be no different

13  than *Vaquero*, and District Courts have followed *Vaquero*. *In re Lidoderm Antitrust Litig*.,

14  No. 14-MD-02521-WHO, 2017 WL 679367, at *11 (N.D. Cal. Feb. 21, 2017).

15       In this matter, off-the-clock time will be determined by estimation for the Class, if

16  liability is found to exist, and regular rate underpayments that can be recovered will be

17  calculated from pay records. Penalties will be calculated for employees under Labor Code

18  §§ 203 and 226. Differences in recoveries for different class members should not be

19  considered for certification purposes.

20       ### 3.    The Ninth Circuit Rejected an Ascertainability Requirement

21       As noted above, the Ninth Circuit held that an "ascertainability" requisite is

22  incompatible with the plain language of Rule 23. *Briseno*, 844 F.3d at 1125.

23       ### 4.    Class-Action Treatment Is Superior to Individual Actions.

24       Rule 23(b)(3) requires this Court to determine whether "a class action is superior to

25  other available methods for a fair and efficient adjudication of the controversy." A class

26  action is superior to other methods of litigation "[w]here class wide litigation of common

27  issues will reduce litigation costs and promote greater efficiency" and where "no realistic

28  alternative exists to class wide treatment." *Valentino v. Carter- Wallace, Inc.*, 97 F.3d

1227, 1234-35 (9th Cir. 1996).  Rule 23(b)(3) lists four factors to be considered in deciding superiority; additional factors also confirm the superiority of wage and hour class actions.

*a)*      *Based on the Nature and Size of the Claims, Class Members Have Little Incentive to Bring Individual Actions.*

The first factor is the interest of each class member in "individually controlling the prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  Here, any interest is minimal because, while the aggregate damages of class members may be large, the damages of each individual are small.  *See Hanlon*, 150 F.3d at 1023.  In fact, a class action is the only feasible means by which individual employees who are victims of Defendant's violations can hope to obtain a cost-effective remedy.  "The class action is one of the few legal remedies the small claimant has against those who command the status quo."  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 186 (1974) (Douglas, J., conc. and diss. in part).

*b)*      *No Other Actions Are Known to Exist*

To Plaintiff's knowledge, no other pending cases are known to exist.

*c)*      *Concentrating Class Claims in a Single Forum Is Desirable.*

Another factor to be considered is the desirability "of concentrating the litigation of the claims in the particular forum."  *See* Fed. R. Civ. P. 23(b)(3)(C). The United States District Court for the Central District of California is an appropriate forum for this class action. This forum is convenient for the parties and their counsel and most or all of the activities at issue occurred here, since Defendant operates in San Diego area.  Thus, because Plaintiff and Defendant are within this Court's jurisdiction, this Court is an appropriate forum, and venue is appropriate.  *Hanlon*, 150 F.3d at 1023.

*d)*      *No Significant Management Difficulties Are Present.*

The Court must compare "the difficulties likely to be encountered in the management of a class action" ***with other available alternatives***.  *See* Fed. R. Civ. P. 23(b)(3)(D).  Management of this case as a class action will not involve such difficulty that

1  individual actions would be a better way of resolving this controversy.  Liability to the

2  Class will be determined on the basis of common proof.

3     With respect to the need for individual damage calculations, as discussed above,

4  "[t]he amount of damages is invariably an individual question and does not defeat class

5  treatment."  *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975).  As to how damages

6  will be proven, it will be simple here, as it is entirely a series of mathematical calculations

7  based upon off-the-clock work time estimates for the Class and time and pay records

8  already shown to be available.

9  **VI.**   **CONCLUSION**

10     Based on the foregoing, Plaintiff requests that the Court grant class certification as

11  requested, or as the Court otherwise deems just and proper.  If the Court concludes that

12  any claim may be suitable for certification following further evidentiary submissions and

13  briefing, then Plaintiff requests as to such a claim that any denial of certification be

14  without prejudice to renewal as specified by the Court.

15           Respectfully submitted,

16  Dated:  January 6, 2025     **MOON LAW GROUP, PC**

17

18  By: _____
     Kane Moon

19       H. Scott Leviant
     Sandy Pham

20       Attorneys for Plaintiff ARNOLD
     SAMUEL CASTRO

21

22

23

24

25

26

27

28